IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IRENE OUTLAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-CV-31-WKW |
| | ) | [WO] |
| PRATTVILLE HEALTH AND | ) | |
| REHABILITATION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Irene Outlaw worked as a certified nursing assistant for Defendant Prattville Health and Rehabilitation, LLC, a long-term care facility, until her termination on June 19, 2020. Plaintiff contends that Defendant interfered with her rights under the Family and Medical Leave Act and the Families First Coronavirus Response Act and fired her in retaliation for taking protected leave under those Acts after having been exposed to the Coronavirus Disease 2019 ("COVID-19").

Before the court is Defendant's motion to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 7.) The motion, which is fully briefed, is due to be granted in part and denied in part.

## II. JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and § 1343. The parties do not contest personal jurisdiction or venue.

## III. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor." *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018) (alteration adopted). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The well-pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true. *Id.*

## IV. FACTS

Defendant fired Plaintiff on June 19, 2020. During the two months preceding her termination and absence from work, Plaintiff twice was exposed to someone who had tested positive for COVID-19. After each exposure, Plaintiff self-quarantined based upon the Centers for Disease Control and Prevention's guidelines

recommending a fourteen-day period of self-isolation for any person exposed to someone who had contracted COVID-19. (Doc. # 1, ¶¶ 9, 25.) Plaintiff also "understood that if she followed these guidelines to prevent potential COVID-19 exposure to the facility's employees and residents, her job would remain secure." (Doc. # 1, ¶ 25.)

After her first exposure to COVID-19 on April 26, 2020, Plaintiff self-isolated until May 10, 2020. (Doc. # 1, ¶ 22.) On the latter date, Plaintiff's COVID-19 test was inconclusive, and her employer told her that she could not return to work until she received a negative COVID-19 test. (Doc. # 1, ¶ 23.) Plaintiff does not allege whether she took another COVID-19 test. However, as of June 7, 2020, Plaintiff had not been back to work and again was exposed to an individual with COVID-19. She promptly informed her employer of the exposure. (Doc. # 1, ¶ 24.) "As a result, [Plaintiff] was again required to remain quarantined until June 21, 2020." (Doc. # 1, ¶ 24.) The source of the "requirement"—*e.g.*, an employer directive, a state or local order, or some other source—is not alleged.

During her second quarantine, Plaintiff tried to contact Defendant's administrator, Tina Taylor, to "confirm when it was safe to return to work." (Doc. # 1, ¶ 27.) Ms. Taylor initially did not respond to Plaintiff's calls or texts, but on June 10, 2020, she sent Plaintiff a text message, "apologiz[ing] for not getting back to her sooner." (Doc. # ¶ 28.) Then, to Plaintiff's surprise, on June 19, 2020, Ms.

3

Taylor informed Plaintiff over the phone that she was terminated. (Doc. # 1, ¶ 29.) Ms. Taylor did not give a reason, but Plaintiff later learned that she was fired allegedly "because she refused to return to work." (Doc. # 1, ¶ 30.)

Plaintiff brings three counts against Defendant, alleging violations of the anti-interference and anti-retaliation provisions of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (Counts One and Two) and of the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (2020) (Count Three).

## V. DISCUSSION

### A. The FMLA: Counts One and Two

In Counts One and Two, Plaintiff alleges that Defendant interfered with her right to FMLA leave benefits for a serious health condition and terminated her employment in retaliation for her attempt to exercise her right to leave benefits under the FMLA. (*See* Doc. # 1, ¶¶ 35, 43.) The FMLA provides employees unpaid leave for up to twelve weeks in a twelve-month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The term "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The

FMLA interference and retaliation claims in Counts One and Two of the complaint both "require the employee to establish a 'serious health condition.'" *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003).

Defendant argues that Plaintiff's complaint does not state a plausible FMLA claim because under the FMLA mere exposure to an individual with COVID-19 is not a qualifying "serious health condition." (Doc. # 7, at 6 ("Plaintiff is essentially arguing that her exposure to COVID-19 and subsequent quarantine qualified her for FMLA leave.").) Plaintiff's silence is telling. In her response, Plaintiff has not pointed to any allegations in the complaint that show a serious health condition. Nor has she addressed whether the allegations fulfill this FMLA criterium.

Plaintiff's theory in Counts One and Two is that she was entitled to leave benefits under the FMLA. (*See, e.g.*, Doc. # 1, ¶¶ 35, 43.) That alleged entitlement, however, carries with it a requirement that Plaintiff had a serious health condition. No serious health condition is alleged. Plaintiff does not allege that she contracted COVID-19. She alleges only that on one occasion she had an inconclusive test result. (Doc. # 1, ¶ 23.) There also are no allegations that Plaintiff suffered any symptoms, mild or serious, mimicking COVID-19. Without allegations demonstrating that Plaintiff suffered a serious health condition, the complaint does

not state a plausible claim for relief under the anti-interference and anti-retaliation provisions of the FMLA.[1]

When Congress enacted the FMLA in 1993, it neither anticipated the public health emergency that would begin in 2020 nor accounted for an asymptomatic employee's self-isolation after exposure to COVID-19. A finding on the complaint's allegations that Plaintiff suffered a qualifying serious health condition under the FMLA would be inconsistent with the statutory language, *see* § 2612(a)(1)(D), and this court cannot revise the FMLA to bring in Plaintiff's circumstances. *See Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc) ("We will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it."). Counts One and Two are due to be dismissed.

---

[1] Plaintiff offers no facts, theory, or caselaw that would justify averting the serious health condition requirement. The court is aware that one circuit has recognized an FMLA claim based on a theory of involuntary leave, meaning that the employer forced the employee to take FMLA leave, even though the employee did not have a serious health condition. Here, the complaint's allegations—which assert that Plaintiff qualified for leave under the FMLA—are inconsistent with an involuntary-leave theory. In any event, Plaintiff has not argued this theory, which is just as well because the Eleventh Circuit "has not yet addressed whether an involuntary-leave theory is actionable under the FMLA." *Callaway v. Lee Mem'l Health Sys.*, No. 2:19-CV-745-SPC-MRM, 2022 WL 93534, at *5 (M.D. Fla. Jan. 10, 2022) (citing *Grace v. Adtran, Inc.*, 470 F. App'x 812, 816 (11th Cir. 2012)).

**B.     The FFCRA (Count Three)**

While the court cannot amend the FMLA, Congress can, and it did through the FFCRA.  This brings the discussion to Count Three.

Count Three alleges interference and retaliation under the FFCRA.  Plaintiff alleges that Defendant terminated her employment after she notified her employer "of her necessary COVID-19 quarantine and testing results" and that Defendant "interfered with her ability to take leave" under the FFCRA.  (Doc. # 1, ¶ 49.)

The FFCRA established two temporary acts:  (1) the Extended Family Medical Leave Emergency Act ("EFMLEA"), which amended the FMLA; and (2) the Emergency Paid Sick Leave Act ("EPSLA").  Both acts were effective from April 2020 through December 2020 and, thus, were operative during Plaintiff's employment.[2]  *Paid Leave Under the FFCRA*, 85 Fed. Reg. 19326-01, 19327 (Apr. 6, 2020); *see also* 29 U.S.C. § 2612(a)(1)(F).

   *1.     The EFMLEA*

Through the EFMLEA, the FFCRA temporarily amended the FMLA to provide up to twelve weeks of family and medical leave, ten of which were paid, for covered employees who had a "qualifying need related to a public health emergency."  FFCRA, Pub. L. No. 116-127, §§ 3101–06, 134 Stat. 178, (2020)

---

[2] The complaint cites the FFCRA and the EFMLEA, but it does not cite the EPSLA. Because the EPSLA is part of the FFCRA and because Defendant's motion addresses the EPSLA, Defendant's notice of an EPSLA claim in Count Three is presumed. (*See* Doc. # 7, at 10–12.)

(codified at 29 U.S.C. § 2612). The EFMLEA incorporated the provisions of the FMLA prohibiting an employer's interference with or retaliation against employees taking EFMLEA leave. *See* 29 C.F.R. § 826.151(a) (2020).

Unfortunately for Plaintiff, the complaint's allegations do not fall within the scope of EFMLEA coverage. The EFMLEA restricted the definition of a "qualifying need related to a public health emergency" to situations where "the employee is unable to work (or telework) due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, or the child care provider of such son or daughter is unavailable, due to a public health emergency," 29 U.S.C. § 2620(a)(2)(A), "with respect to COVID-19 declared by a Federal, State, or local authority," *id.* § 2620(a)(2)(B). *See also Thornberry v. Powell Cnty. Det. Ctr.*, No. CV 5:20-271-DCR, 2020 WL 5647483, at *2 (E.D. Ky. Sept. 22, 2020) (explaining that "EFMLEA's single qualifying need" for EFMLEA leave was the "need for leave to care for the son or daughter" whose "school or place of care ha[d] closed" due to COVID-19 (citation and quotation marks omitted)).

Defendant correctly points out that the complaint is devoid of allegations that Plaintiff "was unable to work because she was caring for her son or daughter whose school was closed." (Doc. # 7, at 12.) Plaintiff's response to this argument again is silence, and that silence aligns with the allegations. There are no allegations that

8

Plaintiff was unable to work because she needed to care for a minor child whose school was closed based on the consequences of COVID-19. The complaint does not set forth a right to leave that is available under the EFMLEA. Because Plaintiff has not stated a plausible claim for relief under the EFMLEA, the EFMLEA claim in Count Three is due to be dismissed.

### 2. *The EPSLA*

The FFCRA's temporary amendments also included the EPSLA. *See* FFCRA, Pub. L. No. 116-127, §§ 5101–11. The EPSLA provided full-time employees who worked for covered employers to paid sick leave up to two weeks when unable to work for specified reasons related to COVID-19. Those reasons included situations when an employee was subject to a quarantine or isolation order or when an employee was advised by a health care provider to self-quarantine. *See id.*, at § 5102(a)(1)–(2). The EPSLA also specified that it was "unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who . . . takes leave" under the EPSLA. *Id.*, at § 5104(1).

Urging dismissal of the EPSLA claim, Defendant argues that Plaintiff is excepted from EPSLA's coverage because she is a health care provider. (Doc. # 7, at 11–12.) This argument cannot carry the day on the allegations.

The EPSLA provides that "an employer of an employee who is a health care provider or an emergency responder *may* elect to exclude such employee from" its

9

coverage. FFCRA, Pub. L. No. 116-127, at § 5102(a) (emphasis added). The word "may" is permissive, not mandatory. *See May*, Black's Law Dictionary (7th ed. 1999) (providing that "may" in its "primary legal sense" means "permissive" or "discretionary"). From the face of the complaint, there are no allegations indicating that Defendant elected to exclude its health care employees from coverage. Defendant's motion to dismiss makes no other argument for dismissal of the EPSLA component of the FFCRA claim. Plaintiff's EPSLA claim in Count Three thus proceeds.

## VI. CONCLUSION

Based on the foregoing, it is ORDERED that Defendant's motion to dismiss (Doc. # 7) is GRANTED in part and DENIED in part as follows:

(1) Counts One and Two are DISMISSED; and

(2) Count Three, which invokes the FFCRA, is DISMISSED as to rights asserted under the EFMLEA and DENIED as to rights asserted under the EPSLA.

DONE this 11th day of May, 2022.

                                        /s/ W. Keith Watkins
                             UNITED STATES DISTRICT JUDGE